**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

-------------------------------------------------------

JONATHAN HODGE, an individual,

        Plaintiff,

    v.

BOSSIER PARISH and SHERIFF JULIAN C. WHITTINGTON, as the public entity responsible for Bossier Parish Maximum Security Facility,

        Defendants.

-------------------------------------------------------

**CASE NO. 22-cv-_____**

**JUDGE _____**

**MAGISTRATE JUDGE _____**

**JURY TRIAL DEMANDED**

## COMPLAINT

NOW COMES Plaintiff, JONATHAN HODGE, an individual, by and through his undersigned counsel, hereby files this Complaint and sues SHERIFF JULIAN C. WHITTINGTON, as the political entity responsible for the Bossier Parish Maximum Security Facility, and BOSSIER PARISH for damages and attorneys' fees and costs pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*. ("Americans with Disabilities Act" or "ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*. ("Rehabilitation Act" or "ADA"), who respectfully avers as follows:

1.     This lawsuit arises out of the disability-related discrimination of MR. HODGE while in the custody and care of Defendants at the Bossier Parish Maximum Security Facility ("BPMSF"). MR. HODGE has sickle cell disease, but DEFENDANTS refused to take necessary steps to accommodate MR. HODGE.

2.     Instead of accommodating MR. HODGE'S needs, it DEFENDANTS ignored his requests for accommodation.

1

## JURISDICTION AND PARTIES

3.      JONATHAN HODGE is an individual above the age of majority and of sound mind.

4.      BOSSIER PARISH is sued as a municipal entity. BOSSIER PARISH is responsible for providing medical services, equipment, personnel, and developing policies, procedures, and practices related to the medical unit at BPMSF.

5.      SHERIFF JULIAN C. WHITTINGTON (the "SHERIFF WHITTINGTON") is sued in his official capacity as the public entity responsible for security and operations of BPMSF.

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for MR. HODGE'S claims arising under federal law.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events that give rise to the claims occurred in this District.

## FACTS

8.      MR. HODGE is a resident of, and is domiciled in, Bossier Parish, Louisiana.

9.      MR. HODGE is a qualified individual with a disability under the ADA/RA. Specifically, MR. HODGE has sickle cell disease, which substantially limits the function of his circulatory system. *See* 28 C.F.R. § 36.105(b)(2).

10.     MR. HODGE is a resident of Bossier City, Louisiana.

11.     On or about December 15, 2021, MR. HODGE was arrested and booked into BPMSF.

12.     On or about that same day, MR. HODGE advised the medical staff of his condition and his disability-related needs.

13.     Specifically, MR. HODGE advised the medical staff that he needed two types of disability-related medication, specifically, a Hydroxyurea, methadone, and oxycodone.

14.     MR. HODGE had been prescribed these medications prior to his incarceration.

15.      When he asked for these medications, MR. HODGES was denied and was told that the narcotic based medications (methadone and oxycodone) were "rarely prescribed."

16.      Instead of the necessary pain-related medications to manage his sickle cell disease, the medical staff prescribed MR. HODGE a heavy dose of Tylenol and ibuprofen.

17.      As a chronic user of pain medication, and due to his sickle cell disease, a heavy dose of Tylenol and ibuprofen was not an appropriate accommodation for MR. HODGE.

18.      Upon information and belief, MR. HODGE requested on other occasions that he be given the needed medication of methadone and oxycodone, but this request was rejected.

19.      As a result of being given high doses of Tylenol and ibuprofen in lieu of the prescribed methadone and oxycodone, MR. HODGE developed ulcers and severe bleeding.

20.      MR. HODGE was taken to the hospital many times during his incarceration.

21.      MR. HODGE was seen by an off-site physician, who insisted that MR. HODGE be provided methadone and oxycodone. This request was also rejected.

22.      Specifically, according to a medical record, Mr. HODGE was examined by a physician outside of the prison, who stated the following in writing:

> "- again asking Bossier Max to provide pain medication that is STANDARD OF CARE
>
> -was giving nsaids which caused ulcers and server GI bleed; again patient cannot take NSAIDS[1]
>
> - now giving 1300 mg of Tylenol BID which is higher than recommended dose for chronic use
>
> - methadone 10 mg TID again ordered as patient was stable on this at home"

23.      Upon information and belief, the above message was relayed to the medical staff at

---

[1] NSAIDS is an acronym for "non-steroidal anti-inflammatory drugs" such as ibuprofen that are known to cause gastrointestional bleeding when administered in excessive dosages.

BPMSF.

24.     Upon information and belief, despite receiving this actual notice of MR. HODGE's needed disability-related medication, the medical staff at BPMSF did not provide MR. HODGE with his needed disability-related medication. Instead, he was provided the high doses of Tylenol and ibuprofen.

25.     Likewise, another note, dated July 7, 2022, from Mindie Michelle Kavanaugh, documented that MR. HODGE had not been receiving his needed disability-related accommodations.

26.     Specifically, the medical record stated:

> "Jonathan Hodge is a 34 y.o. male who presents for sickle cell pain management, vit. D deficiency, currently incarcerated. He has been in the hospital multiple times since last visit due to pain crisis and late June due to GI bleed. He was found to have multiple gastric and small intestine ulcers due to nasaid use. He still has not had his pain meds at the facility, bust hasd [sic] been allowed to take NSADs and tylenol."

27.     The above record demonstrates that, yet again, it was documented that MR. HODGE was not receiving the disability-related accommodation he needed at BPMSF and was instead given high doses of Tylenol and ibuprofen.

28.     Without his needed accommodation, and instead being provided with dangerous doses of Tylenol and ibuprofen, MR. HODGE was in severe pain, developed ulcers, and experienced GI bleeding.

29.     MR. HODGE's ulcers were so severe that they persisted after his release from incarceration. Upon information and belief, MR. HODGE was recently recommended surgery to address the ulcers.

30.     Upon information and belief, the medical staff, employed by or working on behalf of Bossier Parish, made the decision not to supply MR. HODGE with the necessary disability-

related medication and solely provide him with dangerous doses of Tylenol and ibuprofen.

31.      Upon information and belief, another accommodation that was available to MR. HODGE was Defendants transferring him to an alternative facility that could provide him with the methadone and oxycodone.

32.      Specifically, the Louisiana Department of Corrections can accept an inmate or prisoner that is beyond the capacity of the local prison to handle.

33.      Upon information and belief, both defendants failed to take necessary steps of transferring MR. HODGE to an alternative facility where he could receive his needed disability-related medication.

34.      By failing to provide MR. HODGE with a needed disability-related accommodation, Defendants committed discrimination against MR. HODGE.

35.      Upon information and belief, in the alternative, the medical staff were unable to prescribe MR. HODGE his needed, disability-related medication due to a policy, procedure, or practice implemented by SHERIFF WHITTINGTON.

36.      To the extent the medical staff failed to accommodate MR. HODGE due to a policy, procedure, or practice implemented by SHERIFF WHITTINGTON, then SHERIFF WHITTINGTON is responsible for the ADA violation(s) at issue.

37.      Defendants knew of MR. HODGE's disability, his disability-related needs, and chose not to accommodate said need. Under the ADA and Rehabilitation Act, Defendants' conduct described above constitutes intentional discrimination.

38.      Upon information and belief, MR. HODGE completed a step 1 request for administrative remedy.

39.      Upon information and belief, MR. HODGE completed the necessary step 2 request

under the administrative remedy procedure.

40.    Upon information and belief, MR. HODGE was unable to resolve his grievances via his requests for administrative remedy.

## COUNT I:

## VIOLATION OF TITLE II OF THE ADA

41.    MR. HODGE realleges and reavers paragraphs 1-40 as if they were expressly restated herein.

42.    Upon information and belief, SHERIFF WHITTINGTON develops and provides various services offered at BPMSF.

43.    Upon information and belief, SHERIFF WHITTINGTON and/or its employees/agents develop, introduce, implement, and enforce various policies, procedures, and practices at BPMSF.

44.    Upon information and belief, BOSSIER PARISH is the owner of BPMSF.

45.    Upon information and belief, BOSSIER PARISH is responsible for the expenses of establishing, maintaining and operating BPMSF and for all the expenses of providing medical treatment to inmates, while SHERIFF WHITTINGTON has the duty of operating the facility and seeing to it that the inmates are properly cared for, fed and clothed. At all times relevant to this action, Title II of the ADA, 42 U.S.C. § 12131, *et seq*. has been in full force and effect and has applied to the SHERIFF WHITTINGTON's conduct.

46.    At all times relevant to this action, the U.S. Department of Justice regulations implementing Title II of the ADA, 28 C.F.R. Part 35, have been in full force and effect and have applied to DEFENDANTS' conduct.

47.    At all times relevant to this action, MR. HODGE has been substantially limited in the major life activity of circulatory function as a result of his sickle cell disease.

6

48.     DEFENDANTS are public entities within the meaning of Title II of the ADA, 42 U.S.C. § 12131(1).

49.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

50.     Federal regulations implementing Title II of the ADA provide that a public entity may not "(i) deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; (ii) afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; [or] (iii) provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 35.130(b)(1).

51.     Federal regulations implementing Title II of the ADA further provide that "a public entity shall operate each service, program, or activity so that the service, program or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a).

52.     Federal regulations implementing Title II of the ADA further provide that a public entity may not "Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service." 28 C.F.R. § 35.130(b)(1)(vii).

53.     By and through their actions set forth above, DEFENDANTS discriminated against MR. HODGE, on the basis of disability, in violation of Title II of the ADA and its implementing

regulations.

54.     While at BPMSF , MR. HODGE expected that his civil rights would not be violated and that he would be receive necessary disability-related accommodations. By and through their discrimination, DEFENDANTS failed to satisfy MR. HODGE's expectations. MR. HODGE sues for damages for injury to his person.

55.     MR. HODGE is therefore entitled to compensatory and nominal damages, and attorneys' fees, costs, and expert expenses.

<b><u>COUNT II:</u></b><br><b><u>VIOLATION OF THE REHABILITATION ACT</u></b>

56.     MR. HODGE repeats and realleges all preceding paragraphs in support of this claim.

57.     At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, has been in full force and effect and has applied to DEFENDANTS' conduct.

58.     At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to DEFENDANTS' conduct.

59.     At all times relevant to this action, MR. HODGE has been substantially limited in the major life activity of circulatory function as a result of his sickle cell disease, and thus was disabled within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

60.     At all times relevant to this action, DEFENDANTS have been offering programs, services, activities, or accommodations receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

61.     Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the

8

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

62.     The Rehabilitation Act extends relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

63.     DEFENDANTS discriminated against MR. HODGE, on the basis of disability, in violation of 29 U.S.C. § 794.

64.     While at BPMSF , MR. HODGE expected that his civil rights would not be violated and that he would be receive necessary disability-related accommodations. By and through their discrimination, DEFENDANTS failed to satisfy MR. HODGE's expectations. MR. HODGE sues for damages for injury to his person.

65.     MR. HODGE is therefore entitled to seek and recover compensatory and nominal damages for the injuries and loss he sustained as a result of DEFENDANTS' discriminatory conduct as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

66.     MR. HODGE is further entitled to an award of attorneys' fees, and costs (including expert expenses) pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a).

### **PRAYER FOR RELIEF**

WHEREFORE, MR. HODGE prays that this Court grant the following relief:

A.     This Court award compensatory and nominal damages pursuant to the ADA and RA

B.     Reasonable costs, expenses, and attorneys' fees pursuant to the ADA and RA;

C.     Interest on all amounts at the highest rates and from the earliest dates allowed by law; and

D.     Such other relief as the Court deems just and proper, and/or is allowable under the law.

Respectfully Submitted,

**BIZER & DᴇREUS, LLC**
*Attorneys for Plaintiff*

/s/ Garret S. DeReus
ANDREW D. BIZER (LA # 30396)
GARRET S. DᴇREUS (LA # 35105)
EMILY A. WESTERMEIER (LA # 36294)
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996
Email: ewest@bizerlaw.com
        andrew@bizerlaw.com
        gdereus@bizerlaw.com

10